UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SKYLER DEGOLIA et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01662-SRC |
| | ) | |
| AMBER TERRACE APARTMENTS, | ) | |
| LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum and Order

Plaintiffs—two tenants and a cosigner—signed a lease on an apartment owned by Amber Terrace.  Some time later, a landlord-tenant dispute arose over maintenance requests to fix water damage.  Plaintiffs asserted constructive eviction and vacated the apartment.  And Amber Terrace attempted to collect the debt allegedly owed to it.  Plaintiffs assert myriad state-law claims and a handful of claims under the Fair Debt Collection Practices Act.  Defendants removed this case to federal court.  Plaintiffs move to remand, and Defendants move for judgment on the pleadings.  The Court addresses each motion in turn.

## I.      Factual background

The Court accepts the following relevant facts as true for the purpose of Defendants' motion.  In March 2023, Plaintiffs Skyler Degolia, Keith Mack, and Susan Degolia entered into a one-year lease agreement with Amber Terrace for an apartment in St. Charles, Missouri.  Doc. 6 at ¶¶ 14, 19–20.  Skyler Degolia and Keith Mack resided at the apartment, *id.* at ¶¶ 1, 2, and Susan Degolia cosigned the lease agreement as "guarantor of the Tenants' obligations," *id.* at ¶ 3.  *See also* doc. 21-5 at 73–115 (The Court cites to page numbers as assigned by CM/ECF.).

The lease agreement set the monthly rent at $825, doc. 6 at ¶ 20, and "Plaintiffs deposited with Defendant Amber Terrace []a security deposit in the amount of $825.00," *id.* at ¶ 21.  The lease agreement also required Plaintiffs to pay rent "through the 'AppFolio,' online portal or by 'Drop Box (as applicable).'"  *Id.* at ¶ 22; doc. 21-5 at 73.  The lease further stated that "[a]ll rent should be paid through the AppFolio online portal."  Doc. 6 at ¶ 23.  It also noted that "[c]heck (ACH) payment is free through AppFolio," and that "credit / debit cards are also accepted with a small processing fee."  *Id.* at ¶ 24; doc. 21-5 at 83.  But "when setting up payment in AppFolio, Plaintiffs observed that the platform had no option for tenants to make ACH payments and there was no free method for making rent payments[.]"  Doc. 6 at ¶ 25.  Instead, AppFolio assessed an additional processing fee per transaction, which Plaintiffs incurred when making rent payments.  *Id.* at ¶¶ 25–30.

"Plaintiffs' bank statements identified the merchant for their rent payments through AppFolio as [Defendant] Millsap LLC," *id.* at ¶ 31, but "Millsap LLC was never disclosed in the Lease or eventual extension as a landlord, agent, or property manager, and Plaintiffs were never notified that rent payments would be processed under that name," *id.* at ¶ 32.  Then, in August 2024, Defendant "'Millsap Properties,' was registered with the Missouri Secretary of State as a business name used by Defendant Millsap, LLC[.]"  *Id.*  at ¶ 33.  But Plaintiffs aver that "Millsap Properties was not disclosed in the eventual Lease extension as a landlord, agent, or property manager, nor were Plaintiffs notified that Millsap Properties would become involved in their tenancy."  *Id.* at ¶ 34.

After that, Plaintiffs claim that "Millsap Properties used the AppFolio platform to issue monthly statements, post 'due' balances, assess 'late fees,' and communicate payment demands to Plaintiffs on behalf of Amber Terrace []."  *Id.* at ¶ 35.  And "Millsap Properties regularly

2

perform[ed] the same rent-collection and payment-processing functions for Amber Terrace []

and other affiliated property-owning LLCs." *Id.* at ¶ 36.

In late October 2024, "Plaintiffs received an e-mail from Defendant Keith Millsap, identifying himself as acting on behalf of Defendant Millsap Properties from the e-mail address donotreply@appfolio.com, regarding the terms of the Lease with Amber Terrace []." *Id.* at ¶ 37; doc. 21-5 at 116. The email listed contact information for Millsap Properties that matched the contact information provided for Amber Terrace in the lease agreement. Doc. 6 at ¶ 40; *compare* doc. 21-5 at 116 *with id.* at 73, 84. Plaintiffs claim that they believed the "e-mail was an official communication made on behalf of the landlord and lessor of the Premises concerning Lease terms, obligations, and legal rights." Doc. 6 at ¶ 48.

In February 2025, Plaintiffs extended their lease on a month-to-month basis for $910 a month. *Id.* at ¶¶ 49–54; doc. 21-5 at 117–20. Several months later, a landlord-tenant dispute arose regarding maintenance requests to fix water damage in the unit; Plaintiffs alleged constructive eviction and vacated the apartment. Doc. 6 at ¶¶ 55–151; *see* doc. 21-5 at 121–52. But as relevant here, in August 2025, Plaintiffs received a "[c]ertified letter[,]" doc. 6 at ¶ 147; doc. 21-5 at 151–52, from Amber Terrace with an "itemized statement of charges purportedly owed by Plaintiffs," doc. 6 at ¶¶ 149–50; doc. 21-5 at 152. According to the letter from Amber Terrace, Plaintiffs owed $559.00. Doc. 21-5 at 152.

## II.    Procedural background

In September 2025, Plaintiffs sued, in state court, Defendants Amber Terrace Apartments, LLC; Millsap, LLC (d/b/a Millsap Properties); Villa Roma Apartments, LLC; Leslie Apartments, LLC; Clayton Road Building, LLC; Random Properties, LLC; White Birch Apartments, LLC; and Keith Millsap. Doc. 6 at 1–2; doc. 1 at ¶ 1. Plaintiffs assert a total of 18

3

counts against Defendants: (i) ten state-law counts (ii) three counts asserting violations of the Fair Debt Collection Practices Act (FDCPA), and (iii) five class-action counts under state-law and the FDCPA. *See* doc. 6 at ¶¶ 199–353. Two months later, Defendants removed this action to federal court. *See* doc. 1. Plaintiffs filed a motion to remand. Doc. 24. Defendants filed separate answers, *see* docs. 31–38, and then moved for judgment on the pleadings, doc. 44. With both motions fully briefed, docs. 25, 39, 40, 42-1, 49, 53, the Court turns to address Plaintiffs' Joint Motion to Remand.

### III.      Joint Motion to Remand

#### A.      Standard

Defendants may remove civil actions "brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Removal based on federal question jurisdiction . . . is generally governed by the 'well-pleaded complaint' rule, which provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000). "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction . . . [and] all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator*, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (citation omitted). Further, courts must strictly construe removal statutes. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).

**B.      Discussion**

The parties do not dispute that Plaintiffs' well-pleaded complaint arises under the Fair Debt Collection Practices Act.  *See* doc. 1 at ¶¶ 2–4; doc. 1-3 at ¶ 12; *see also* 28 U.S.C. § 1331. Plaintiffs also "do not dispute that [r]emoving Defendants attempted to remove the state court action within 30 days of service upon them."  Doc. 25 at 4; *see* 28 U.S.C. § 1446(b)(1)–(2)(A) (requiring that the notice of removal be filed in federal court within 30 days with the consent of all properly joined and served defendants).  Instead, Plaintiffs argue that the Court should remand this case because "[r]emoving Defendants failed to comply with the strict requirements of § 1446 within the 30-day removal window."  Doc. 25 at 4.

Specifically, Plaintiffs allege that removing Defendants failed to:  (i) provide Plaintiffs with prompt notice of the removal, (ii) timely file an accurate notice of removal with the state court, (iii) timely file a complete copy of all state court pleadings with this Court, and (iv) provide the Court with the removing Defendants' unambiguous consent to removal.  *See* doc. 24 at ¶ 7; *see also* doc. 25 at 4–8.  The Court addresses each alleged defect in turn.

**1.      Failure to provide prompt notice**

Section 1446(d) requires that:

[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

28 U.S.C. § 1446(d).  To that end, the Local Rules mandate that the removing party's notice of removal contain "proof of filing the notice with the Clerk of the State Court and proof of service on all adverse parties."  E.D.Mo. L.R. 2.03.

Though removing Defendants' Notice of Removal failed to include (i) proof of filing the notice with the state court and (ii) proof of service on all adverse parties, *see* doc. 1, they later

5

cured this defect in a supplemental filing, doc. 22.  But Plaintiffs argue—without citation to authority—that removing Defendants' failure to cure within 30 days of removal is a fatal defect that warrants remand.  Doc. 25 at 2, 4–5.

The Court disagrees.  Contrary to Plaintiffs' assertion, section 1446(d) only requires that removing Defendants give them and the state court notice of filing their notice of removal "[p]romptly after" filing the notice of removal in federal court.  28 U.S.C. § 1446(d).  Section 1446(d) contains no hard-and-fast 30-day deadline.  *See id.*; *cf.* 28 U.S.C. § 1446(b)(1) (requiring that defendants file only the notice of removal in federal court within 30 days of service of process).  And though one could construe Local Rule 2.03 to require removing Defendants to file their notice of filing their notice of removal concurrently with filing the notice of removal, Plaintiffs cite no authority to support their argument that this possible procedural defect warrants remand.  *See* doc. 25 at 4–5.

While section 1447(c) states that district courts "shall" remand removed cases when "it appears" that the district court lacks subject-mater jurisdiction, section 1447 contains no such mandate for procedural defects.  *See* 28 U.S.C. § 1447(c).  And because removal statutes must be strictly construed, *Nichols*, 284 F.3d at 861, the Court refuses to supply what the statute omits.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts* 93–100 (1st ed. 2012) (discussing the omitted-case canon).  "[T]he preferable result is to continue to allow defects in the removal procedure to be cured so a removed action can remain in federal court."  14C *Wright & Miller's Federal Practice & Procedure* § 3739.2 (4th ed. 2025); *see also* 16 *Moore's Federal Practice* § 107.151 (2026) ("Most courts hold that . . . a failure [to attach process] can be cured by amendment in the federal court, particularly if the plaintiff did not suffer any prejudice as a result of the failure . . . . [T]he better view is to permit the defendant to

amend the removal notice.").  Because removing Defendants cured this defect, *see* doc. 22, the Court declines to remand the case on this basis.

>       **2.**       **Failure to timely file an accurate notice of removal with the state court**

Plaintiffs argue that removing Defendants filed an incomplete and inaccurate notice of removal in state court because "it omitted the three exhibits submitted in federal court and lacked the federal court's filing stamp, indicating it was not the document actually filed here."  Doc. 25 at 5–6 (citing 28 U.S.C. § 1146(d) and E.D.Mo. L.R. 2.03).  Plaintiffs' argument lacks merit. The state court has the first two exhibits.  Doc. 1-3 (Plaintiffs' pleading); doc. 1-4 (the state-court docket).  And while the state court lacks the third exhibit—removing Defendants' Consent to Removal, doc. 1-5—Local Rule 2.03 only requires that removing Defendants file "proof of filing notice with the Clerk of the State Court," which removing Defendants have done,  *see Degolia v. Amber Terrace Apartments*, 2511-CC01231 (St. Charles Cir. Div. Dec. 19, 2025).  Finally, removing Defendants cured the filing stamp defect.  *See id*.  The Court therefore declines to remand the case on this basis.  *See* 14C *Wright & Miller's Federal Practice & Procedure* § 3739.2 (4th ed. 2025); *see also* 16 *Moore's Federal Practice* § 107.151 (2026).

>       **3.**       **Failure to timely file a complete copy of all state court pleadings**

Plaintiffs then argue that removing Defendants failed to file a complete set of the state-court pleadings in federal court because they omitted the exhibits to Plaintiffs' pleading. Doc. 25 at 6–7 (citing 28 U.S.C. § 1446(a), which requires that the notice of removal be filed along with "a copy of all process, pleadings, and orders served upon such defendant or defendants").  Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Thus, Defendants' failure to include the exhibits to Plaintiffs' pleading constituted a procedural defect.  But again,

7

Defendants cured this defect, *see* docs. 21-5, 21-6, so the Court declines to remand the case on this basis, *see Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272 (10th Cir. 2011) (collecting cases supporting the "majority view . . . that a removing party's failure to attached [sic] the required state court papers to a notice of removal is a mere procedural defect that is curable"); *see also* 14C *Wright & Miller's Federal Practice & Procedure* § 3739.2 (4th ed. 2025); 16 *Moore's Federal Practice* § 107.151 (2026).

### 4.        Failure to provide their unambiguous consent to removal

Finally, Plaintiffs argue that the removing Defendants failed to unambiguously consent to removal.  Doc. 25 at 7–8.  Section 1446(b)(2)(A) states that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  "[T]o meet the consent requirement, there must be some timely filed written indication from each served defendant, or from some person with authority to act on the defendant's behalf, indicating that the defendant has actually consented to the removal."  *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187 (8th Cir. 2015) (cleaned up).  "The written indication of consent can come in various forms, and [the Eighth Circuit has] been disinclined to apply the unanimity requirement in a hypertechnical and unrealistic manner."  *Id.*  (cleaned up).  "Congress could have defined with equal specificity the form of . . .  consent but chose not to do so.  Its failure to do so dissuade[d] [the Eighth Circuit] from adopting a rule that places form over substance."  *Id.*; *see also Couzens v. Donohue*, 854 F.3d 508, 515 (8th Cir. 2017).

Here, Defendants' Notice of Removal clearly indicated which defendants were properly joined and served at the time of removal.  *See* doc. 1 at ¶ 6.  And though Defendants' Consent to Removal stated that every Defendant consented—not just the ones who had been properly joined

8

and served, *see* doc. 1-5; *see also* doc. 21-6—the Court refuses to apply the unanimity rule in a "hypertechnical and unrealistic manner" that places "form over substance." *Griffioen*, 785 F.3d at 1187.  The Court therefore declines to remand the case on this basis.  Having rejected Plaintiffs' arguments, the Court denies their Joint Motion to Remand, doc. 24, and turns to address Defendants' Joint Motion for Judgment on the Pleadings, doc. 44.

## IV.      Joint Motion for Judgment on the Pleadings

### A.      Standard

Rule 12(c) provides that after the pleadings close, a party may move for judgment on the pleadings.  "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a [Rule] 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level," *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal

theory." *Id.* at 562 (citation omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claim or element. *Id.* at 556.

At the motion-to-dismiss stage, the Court accepts as true all the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *id.*, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief, *id.* at 555–56; *see also* Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all the allegations contained in a complaint does not, however, apply to legal conclusions. *Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)). Although legal conclusions can provide the framework for a complaint, the pleader must support them with factual allegations. *See id.* at 679. A court reviews the plausibility of the plaintiff's claim "as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

"When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (first quoting *Mo. ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999); and then quoting *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)).

## B.    Discussion

Plaintiffs assert 18 counts against Defendants. The Court first turns to address Plaintiffs' federal-law claims. Plaintiffs assert three FDCPA claims against Defendants accusing them of

10

(i) false representations under 15 U.S.C. § 1692e, doc. 6 at ¶¶ 269–75, (ii) communicating with represented parties under 15 U.S.C. § 1692c, *id.* at ¶¶ 276–82, and (iii) collecting amounts not owed under 15 U.S.C. § 1692c, *id.* at ¶¶ 283–91.  But because Defendants are not "debt collectors" under the FDCPA, the Court grant Defendants' motion.

### 1.    Federal-law claims

#### a.    FDCPA

Congress enacted the FDCPA to "eliminate abusive debt[-]collection practices" by imposing "civil liability on *debt collectors* for certain prohibited debt[-]collection practices." *Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640, 644 (8th Cir. 2021) (citations omitted) (emphasis added); *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1121–22 (8th Cir. 2020) (citing 15 U.S.C. § 1692e).  The FDCPA, by its terms, prohibits only "'debt collectors' from using abusive, unfair, or deceptive practice to recoup money for consumers, but does not apply to creditors." *Duhart v. LRAA Collections*, 652 F. App'x 483, 484 (8th Cir. 2016) (citing *Schmitt v. FMA All.*, 398 F.3d 995, 998 (8th Cir. 2005) (noting that the determination of whether defendant is creditor or debt collector is "fundamental" to an FDCPA claim)).

So if Defendants are not "debt collectors" for the purposes of the FDCPA, "the statute does not apply, and [Plaintiffs'] federal claims fail." *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950 (8th Cir. 2006); *see Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 992 (8th Cir. 2005) ("Designation as a debt collector is the starting point for liability under the statute, not the end."); *see also Albright v. Clayton & Myrick, PLLC*, No. 4:19-cv-01887-SRC, 2021 WL 3737227, at *3 (E.D. Mo. Aug. 24, 2021).

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business" (i) "the principal purpose of which is the

11

collection of any debts," or (ii) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Volden*, 440 F.3d at 950 (citing 15 U.S.C. § 1692a(6)).  Under the principal-purpose definition, the Court looks to the "ordinary meaning of the words 'any business the principal purpose of which is the collection of any debts.'" *Reygadas*, 982 F.3d at 1124.  A "business's 'purpose' is shown by its actions," and under the FDCPA, the business's actions must be "the collection of any debts." *Id.* at 1125. "Read together," the principal-purpose definition requires "*an act whose purpose is collection*." *Id.* (emphasis in original).

In contrast, the regularly collects definition covers "third[-]party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Id.* at 1223 (citation omitted).  A debt owner who collects debts for itself is a "creditor." *See* 15 U.S.C. § 1692a(4).  And the FDCPA generally doesn't regulate "creditors." *Duhart*, 652 F. App'x at 484 (citing *Schmitt*, 398 F.3d at 998); *see* 15 U.S.C. § 1692a(6)(F)(ii) (explicitly exempting from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person").

### b.      Defendants are not "debt collectors" under the FDCPA

Defendants argue that Plaintiffs failed to plausibly allege that they are "debt collectors" under the FDCPA. *See* doc. 42-1 at 33–40.  Plaintiffs, in response, first concede that their FDCPA claims are only against Defendants Millsap Properties, Amber Terrace, and Keith Millsap. *See* doc. 49 at 2 n. 2; *id.* at 9.  Plaintiffs then also concede that Millsap Properties, Amber Terrace, and Keith Millsap are not businesses whose "principal purpose of which is the collection of any debts." *See id.* at 10.  That concession essentially ends the Court's inquiry.

12

Instead Plaintiffs grasp, arguing—without any citations to the record or to any case law—that "[c]ontrary to the Defendants' contentions, this Court can draw a reasonable inference that Defendants are debt collectors where Plaintiffs have alleged, as previously argued, that Millsap Properties collected rents for a portfolio of properties that were intended to be legally distinct from one another." *Id.* at 10.

Because Plaintiffs fail to cite to the record to support their arguments, *see* doc. 49 at 9–11, the Court must assume, or make an educated guess, about the allegations to which they refer. Assuming Plaintiffs refer to their assertions that "Defendants Millsap Properties, Amber Terrace [], and Keith Millsap, individually and collectively, acted as 'debt collectors' . . . by regularly using the mails, AppFolio electronic communications, and interstate commerce for the purpose of collecting debts owed or alleged to be owed in connection with consumer leases of residential property," doc. 6 at ¶ 270, Plaintiffs conceded that Millsap Properties, Amber Terrace, and Keith Millsap are not businesses whose "principal purpose of which is the collection of any debts," *see* doc. 49 at 10.

Perhaps Plaintiffs instead refer to their assertion that "Defendants, in connection with the collection of rent and related charges, are 'debt collectors' . . . because they regularly attempt to collect debts owed or alleged to be owed to another." Doc. 6 at ¶¶ 277, 284. But Plaintiffs' "conclusory statements" "devoid of further factual enhancement" do not suffice. *Iqbal*, 556 U.S. at 678 (citation modified); *see also Twombly*, 550 U.S. at 555. While Plaintiffs "need not set forth detailed factual allegations, or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington v. Bd. of Regents*, 998 F.3d 789, 795–96 (8th Cir. 2021) (citation modified).

13

Plaintiffs fail to sufficiently plead, or even attempt to sufficiently plead, how Millsap Properties, Amber Terrace, and Keith Millsap were "third party collection agents working for a debt owner[.]" *Reygadas*, 982 F.3d at 1123.  Quite the opposite.  Plaintiffs' pleading suggests that Amber Terrace attempted to collect money owed directly to it as a creditor.  *See generally* doc. 6.  Plaintiffs pleaded that they entered into a lease agreement with Amber Terrace.  Doc. 6 at ¶¶ 14, 19–20.  They then stated that Amber Terrace sent them a "[c]ertified letter" with an "itemized statement of charges." *Id.* at ¶¶ 147–49; *see* doc. 21-5 at 152.

Plaintiffs also asserted that Millsap Properties is "a real estate investment and property management group managing a portfolio of apartment communities, among them, Amber Terrace []," doc. 6 at ¶ 5, and that Keith Millsap, "upon information and belief," is the "sole or controlling owner of Amber Terrace [] and Millsap Properties," *id.* at ¶ 11.  And "Plaintiffs received an e-mail from Defendant Keith Millsap, identifying himself as acting on behalf of Defendant Millsap Properties from the e-mail address donotreply@appfolio.com, regarding the terms of the Lease with Amber Terrace []." *Id.* at ¶ 37; doc. 21-5 at 116.  The email listed contact information for Millsap Properties that matched the contact information provided for Amber Terrace in the lease agreement.  Doc. 6 at ¶ 40.  *Compare* doc. 21-5 at 116 *with id.* at 73, 84.  Plaintiffs claim that they believed the "e-mail was an official communication made on behalf of the landlord and lessor of the Premises concerning Lease terms, obligations, and legal rights." *Id.* at ¶ 48.  Because the record contradicts this subjective assertion, the Court need not accept it. *See Iqbal*, 556 U.S. at 681.

But while Keith Millsap communicated with Plaintiffs and Plaintiffs' counsel during the parties' landlord-tenant dispute, doc. 21-5 at 134–50, it was Amber Terrace that sent the certified letter to collect the debt owed to it, doc. 6 at ¶¶ 147–149; doc. 21-5 at 151–52.  Demonstrating

14

common sense, federal courts have held that landlords collecting an owed debt are creditors, not debt collectors under the FDCPA.  *See Frederick v. Harlow Navy Yard*, No. 1:25-cv-01839-UNA, 2025 WL 2377971, at *3 (D.D.C. Aug. 14, 2025) (collecting cases).  Plaintiffs cite no case law to the contrary.  Doc. 49 at 10.  The Court applies common sense and rejects Plaintiffs' unsupported speculation.

### c.    False-name exception

Finally, Plaintiffs invoke an exception to the rule that the FDCPA doesn't regulate creditors—the false-name exception.  Plaintiffs allege "[t]o the extent Defendants contend they were 'creditors,' they used the name of another (Millsap Properties) to collect, thus falling within § 1692a(6)."  Doc. 6 at ¶¶ 270, 277, 284, 324; *see also* doc. 49 at 10.  The FDCPA states that "the term ['debt collector'] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).

A creditor uses a name other than its own when "it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'"  *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (citations omitted).  The false-name exception applies when, under an objective standard, the "least[-]sophisticated consumer would have the false impression that a third party was collecting the debt."  *Id.* at 236; *see Lester E. Cox Med. Ctrs. v. Huntsman,* 2003 WL 22004998, at *8 (W.D.Mo. Aug. 5, 2003) (applying least-sophisticated-consumer standard to the false-name exception), *aff'd,* 408 F.3d 989, 992–93 (8th Cir. 2005); *see also Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (stating that the least-sophisticated-consumer standard "protect[s] consumers of below[-]average sophistication or intelligence," but also "contain[s] an

15

objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices" (cleaned up)). "The focus of the false[-]name exception, in any case, is on whether the creditor has used a name to disguise to the consumer who is actually collecting the debt." *Vincent v. The Money Store*, 736 F.3d 88, 100 n.9 (2d Cir. 2013) (citing *Maguire*, 147 F.3d at 236).

Here, however, the false-name exception does not apply. Plaintiffs entered into a lease agreement with Amber Terrace. Doc. 21-5 at 73–115. And when Amber Terrace attempted to collect its debt, the certified letter used its own name. Doc. 6 at ¶¶ 147–49; doc. 21-5 at 151–52. Keith Millsap may have communicated with Plaintiffs and Plaintiffs' counsel during the parties' landlord-tenant dispute, doc. 21-5 at 134–150, but Amber Terrace was the only party that attempted to collect the debt owed to it, *see* doc. 6 at ¶¶ 147–49; doc. 21-5 at 151–52; *cf. Maguire*, 147 F.3d at 236 (finding that the least-sophisticated customer could not have known that a collection letter was from the creditor when the creditor used a different name and prior correspondence didn't establish or suggest an affiliation with the creditor).

And even if Keith Millsap or Millsap Properties had sent the collection letter in its own name, Plaintiffs' counsel represented them at the time. *Compare* doc. 21-5 at 142 (notifying Millsap in a June 30, 2025, email that Plaintiffs' counsel represented Plaintiffs in this landlord-tenant dispute), *with id.* at 152 (displaying that the collection letter was sent on July 28, 2025). The least-sophisticated-consumer standard doesn't apply to "communications sent to a consumer's attorney." *Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 981 (8th Cir. 2016). In sum, because Defendants are not "debt collectors" under the FDCPA, and no exception applies, the Court dismisses Plaintiffs' FDCPA claims. *See Volden*, 440 F.3d at 950; *see also Albright*, 2021 WL 3737227, at *3.

16

2.        **State-law claims**

Defendants correctly note that this case is "essentially a landlord-tenant dispute."  Doc. 42-1 at 11; *see* doc. 21-5 at 121–52.  So, because the Court dismissed Plaintiffs federal claims, and diversity jurisdiction does not exist in this case, *see* doc. 6 at ¶¶ 1–11, the Court declines to exercise supplemental jurisdiction over their state-law claims.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S 715, 726 (1966) (stating that when a federal court dismisses all federal claims before trial, it should also dismiss the state claims); *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993).

V.        **Conclusion**

Accordingly, the Court denies Plaintiffs' [24] Joint Motion to Remand and grants Defendants' [44] Joint Motion for Judgment on the Pleadings.  Per 28 U.S.C. § 1447(c), the Court remands this case to the St. Charles County Circuit Court.  A separate order of remand accompanies this Memorandum and Order.  The Court directs the Clerk of Court to mail a certified copy of this Memorandum and Order to the clerk of the state court.

So ordered this 27th day of July 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

17